UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

LAMARR LITTLE,

                Petitioner,

-against-

ROBERT ERCOLE,

                Respondent.

------------------------------------------------------------------ X

05-CV-6098 (ARR)

<u>NOT FOR ELECTRONIC
OR PRINT PUBLICATION</u>

<u>OPINION & ORDER</u>

ROSS, United States District Judge:

On December 29, 2005, <u>pro se</u> petitioner Lamarr Little ("Little" or "petitioner") filed a petition for a writ of habeas corpus in this court. Little's petition stems from his 2001 conviction, following a jury trial in New York Supreme Court, Kings County, on charges of attempted murder in the first degree, assault in the first degree, and criminal possession of a weapon in the second degree. For the reasons set forth below, Little's petition is denied.

## BACKGROUND

Late in the evening on September 20, 1999, Little went on a shooting spree through a neighborhood in Brooklyn. After shooting Stan Marshall in the leg in front of Marshall's girlfriend, Kaniqua Owens, and another woman, Little fled on his bicycle. Trial Tr. 807-808.[1] Shortly thereafter, New York City Police Department ("NYPD") Officers Ronald O'Neill and Kenneth Anderson, unaware that Little had shot Marshall, attempted to stop Little on his bicycle to issue a summons for operating his bike on a sidewalk. Trial Tr. 434, 540-541, 569. Little refused to stop. Tr. 436. As O'Neill and Anderson pursued him, Little fired several shots at the officers. Trial Tr. 438-454. O'Neill called for backup. Trial Tr. 447. Little was subsequently

---

[1] "Trial Tr." refers to the transcript of the Little's criminal trial in New York Supreme Court, Kings County, before the Honorable Cheryl Chambers from November 13-30, 2000.

1

apprehended by Sergeant Calum Scott and Officer Jeffrey Ehrenfeld of the NYPD, after Sergeant Scott shot Little in the leg. Trial Tr. 700-701. Defendant was charged by Kings County Indictment Number 7596/99 with numerous charges stemming from this incident.

At Little's November 2000 criminal trial, the prosecution presented the testimony of Marshall, Owens, and another civilian witness, Manuel Belen, each of whom made an in-court identifications of Little. Trial Tr. 770, 811, 979. The prosecution also presented the testimony of Sergeant Scott and Officers O'Neill, Anderson, and Ehrenfeld regarding the pursuit and apprehension of Little. Trial Tr. 431-507, 675-715, 1062-1084, 1188-1204. O'Neill also testified that he recovered Little's gun, a .380 caliber semi-automatic weapon, after the officers apprehended Little. Trial Tr. 455-456. The gun was introduced into evidence at trial. Trial Tr. 481-483. Detective Joseph Ramirez, an expert in firearms operability and microscopic comparison examination, testified that the bullet removed from Marshall's leg after the September 20 incident had been fired from Little's gun. Trial Tr. 1570-1571.

The jury convicted Little of attempted murder in the first degree (O'Neil), assault in the first degree (Marshall), and criminal possession of a weapon in the second degree. Trial Tr. 1789-1790. On April 5, 2001, the court sentenced Little principally to 25 years to life in prison. April 5, 2001 Tr. 10-11.[2]

I. Petitioner's Direct Appeal

Petitioner appealed from the judgment of conviction to the New York Appellate Division, Second Department, on several grounds, including that the prosecutor exercised his peremptory challenges during jury voir dire in a discriminatory manner. Specifically, petitioner argued that the trial court erred in denying his challenge under Batson v. Kentucky, 476 U.S. 79 (1986), to

---

[2] "April 5, 2001 Tr." refers to the transcript of Little's sentencing proceeding in New York Supreme Court, Kings County, before the Honorable Cheryl Chambers on April 5, 2001.

2

the prosecution's peremptory strike of a prospective juror named Antuane Britton, a young black male.

During voir dire, after petitioner raised his Batson challenge related to Britton, the trial court found that petitioner had established a prima facie case of discrimination. Thus, the court asked the prosecutor for a race-neutral explanation for his peremptory strike of Britton. The prosecutor explained the reason for his strike as follows:

> [Britton] did say that not only did he work in the barber shop but he was a barber. He did say that. Something that's very important in this case is an identification during the robbery. One of the descriptions is a blowout, as opposed to curly hair, as opposed to braids, which Mr. Little had then and has now.
>
> Based on that race neutral reason, the fact that I believe Mr. Britton is going to have some sort of expertise as to what he believes a blowout is and I believe that he is going to bring that expertise into the jury, that's the reason I used a preempt on Mr. Britton.

V.D. Tr. 742.[3] After hearing argument from both sides, the trial court credited the prosecutor's explanation for challenging Britton and sustained his peremptory strike. The court stated:

> I find that the reason offered by the prosecutor with respect to Mr. Britton is racially neutral. Identification is an issue in this case. Defense counsel questioned potential jurors about the difference between a description given and the defendant's actual appearance. During the Wade hearing defense counsel specifically cross-examined a witness on the differences in the hairstyles . . . . The People may have a legitimate concern about the specific issue of that particular juror's expertise, meaning his expertise in barbering, in hairstyles.

V.D. Tr. 754.

On appeal, the Second Department rejected petitioner's claim that the prosecution's reason for striking Britton was pretextual and thus the trial court erred in denying petitioner's Batson challenge. The court stated:

> Contrary to the defendant's contention, his Batson claim . . . is without merit. During voir dire, the challenged venireperson stated that he worked in a barber

---

[3] "V.D. Tr." refers to the transcript of jury voir dire in Little's criminal trial in New York Supreme Court, Kings County, before the Honorable Cheryl Chambers from November 2-13, 2000.

3

> shop. Based upon this background and the fact that there were apparent inconsistencies in statements made by the eyewitnesses in describing the defendant's hairstyle, the prosecutor argued that the prospective juror might improperly use his expertise in this area with the jury. Since the prosecutor's reason was directly related to the facts of this case, the trial court correctly determined that the defendant failed to satisfy his burden of proving that the explanations given by the prosecutor were pretextual . . . .

People v. Little, 309 A.D.2d 767, 767 (2nd Dep't 2003) (internal citations omitted). The Second Department found the rest of petitioner's claims to be without merit and denied his appeal in its entirety. Id. at 767-768. The New York Court of Appeals denied petitioner's request for leave to appeal on December 29, 2003. People v. Little, 1 N.Y.3d 575 (2003).

II.     Petitioner's N.Y.C.P.L. § 440.10 Motion

Following his appeal to the Second Department, petitioner filed a motion to vacate his criminal conviction pursuant to N.Y.C.P.L. § 440.10 in New York Supreme Court, Kings County. In that motion, petitioner raised two arguments. "First, he claim[ed] the People did not disclose [Brady v. Maryland, 383 U.S. 73 (1963),] material, in the form of a Civilian Complaint Review Board ('C.C.R.B.') report . . . concerning the investigation of allegations that, on September 25, 1998, then Sergeant Scott improperly pointed his gun at two civilians and searched the apartment of one of them in response to a 911 call." People v. Little, No. 7569/99, slip op. at 2 (N.Y. Sup. Ct., Kings Cnty. May 16, 2005). "The report concluded that the allegations were unfounded. Defendant allege[d] that his counsel requested disclosure of any prior bad acts of the People's witnesses." Id. "Second, defendant claim[ed] that his originally assigned counsel, and his trial counsel, were ineffective in not urging him to plead guilty." Id. The Second Department rejected both claims.

With respect to petitioner's Brady claim, the court found that the C.C.R.B. report was neither exculpatory nor material. Id. at 4. The court stated that the report was "clearly not

4

exculpatory" because "it concerns events which occurred approximately a year before the event of September 20, 1999, and which have no connection to the crimes charged in the indictment. Nothing in the report tends to prove or disprove that defendant committed the crimes charged." Id. Regarding materiality, the court first noted that it was "far from clear that defendant would have been permitted to impeach Det. Scott with the allegations of the complaint" since the report concluded that the allegations were unfounded. Id. Assuming that the report was admissible, though, the court stated it was not material because:

> [T]here is no reasonable possibility that disclosure of the report would have resulted in a verdict more favorable to defendant because the evidence against defendant was overwhelming – defendant all but concedes that when he asserts that it was "suicidal" for him to go to trial, rather than plead guilty, and claims his attorneys were ineffective in failing to advise him to plead guilty. Defendant was identified by five eyewitnesses/victims. Ballistics evidence proved that the bullet in Marshall's leg came from the gun recovered from defendant . . . .
>
> There is also no reasonable possibility that disclosure of the report would have resulted in a verdict more favorable to defendant because Det. Scott's alleged misconduct had no relationship to the crimes defendant was charged with, and Det. Scott was not an important witness against him . . . .

Id. at 5 (internal citations omitted).

With respect to petitioner's ineffective assistance of counsel claim, the court held that petitioner had failed to establish that he was prejudiced by his counsel's alleged failure to advise him to accept the prosecution's plea offer. The court stated that "defendant's willingness to accept any plea offer is conclusively refuted in the minutes of the court proceeding held on June 1, 2000 and the minutes of the court proceeding held on January 16, 2001." Id. at 6. "The June 1, 2000 minutes reflect that Justice Betsy Barros discussed with defendant, directly, his rejection of the People's plea offer of 12 years. Defendant responded that he wanted to go to trial. The court noted that there would therefore be no further plea negotiations." Id. "The minutes of the January 16, 2001 proceeding . . . , at which sentence was to have been imposed, reflect that

5

defendant made a long statement in which he insisted that he was innocent of the charges. He also stated that if he had been guilty he would have pleaded guilty." Id. In particular, the January 16, 2001 minutes to which the court referred reflect that petitioner stated:

> [T]he evidence in this case was . . . very contradictory, because they say I fired at Stan Marshall. They never proved in this case that I was in that area. I never was in that area Stan Marshall was in. I never fired at him.
> . . .
> If I did it I would have copped out to it, pled guilty to it and took a cop-out. They offered me 15 years. I knew how many I am facing. I went to trial because I did nothing that they said had happened. And I did not fire at the police.

January 16, 2001 Tr. 13-14. Based on the June 1, 2001 and January 16, 2001 minutes, the court held that "[d]efendant's own words conclusively refute any current claim that he would have pleaded guilty if he had been properly advised." Little, No. 7569/99, slip op. at 7.

The court rejected petitioner's C.P.L. § 440.10 motion in its entirety.

III.  The Instant Motion

Presently before the court is Little's petition for a writ of habeas corpus. In that petition, he reasserts three claims that the New York courts have previously adjudicated on the merits. Specifically, Little claims that, during the criminal proceedings in New York Supreme Court, (i) the prosecutor violated Batson by exercising his peremptory challenges in a discriminatory manner, (ii) the prosecution failed to disclose exculpatory evidence in accordance with its obligations under Brady, and (iii) he received ineffective assistance of counsel. For the reasons set forth below, Little's petition is denied.

## DISCUSSION

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), enacted in 1996, established a deferential standard that federal habeas courts must apply when reviewing state court convictions. 28 U.S.C. § 2254(d). The statute provides, in pertinent part:

6

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. The statutory language "clearly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts" Supreme Court precedent or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from that precedent." Id. at 405-06. With respect to the "unreasonable application" clause, "a federal habeas court . . . should ask whether the state court's application of clearly established federal law was objectively reasonable." Id. at 409. In determining whether an application was objectively unreasonable, "the most important point is that an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410. Interpreting Williams, the Second Circuit has added that, although "[s]ome increment of incorrectness beyond error is required[,] . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks and citations omitted).

The three claims raised by petitioner in his habeas corpus petition have been adjudicated

on the merits by the New York courts; thus, AEDPA's deferential standard applies to each claim. This court has thoroughly reviewed the state court record of petitioner's criminal proceedings, the state court decisions rendered on his direct appeal and his C.P.L. § 440.10 motion, and the parties' submissions regarding this petition. Based upon its review, the court is in full agreement with the decision rendered by the Second Department on petitioner's <u>Batson</u> claim and the decision rendered by the New York Supreme Court on petitioner's <u>Brady</u> and ineffective assistance of counsel claims. Accordingly, this court finds that those decisions were not "contrary to" or "an unreasonable application of" clearly established federal law. The court rejects the three claims raised by petitioner in his petition for a writ of habeas corpus. His petition is denied.

## CONCLUSION

For the foregoing reasons, petitioner's habeas corpus petition is denied. The court holds that the Second Department's decision rejecting petitioner's <u>Batson</u> claim and the New York Supreme Court's decision rejecting petitioner's <u>Brady</u> and ineffective assistance of counsel claims were not "contrary to" or "an unreasonable application of" clearly established federal law. Because petitioner has failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the court declines to issue a certificate of appealability. In addition, this court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith. <u>Coppedge v. United</u> States, 369 U.S. 438, 444-445 (1962). The Clerk of Court is directed to enter judgment accordingly.

SO ORDERED.

/Signed by Judge Ross/

Allyne R. Ross
United States District Judge

Dated: April 28, 2011
Brooklyn, New York

SERVICE LIST:

**Plaintiff:**
Lamarr Little
#01A2318
Green Haven Correctional Facility
PO Box 4000
Stormville, NY 12582